May it please the court, Cody Hosley for the plaintiff. I'd like to discuss the discharge claim first if I may. With regard to that claim everyone recognized below it's a question of state law under the Oregon statute when did the discharge occur? And in STUPEC the Oregon Supreme Court held in the common law context that in a typical case of advance notice of two weeks notice case the employment relationship ending is the defining time that's when the discharge occurs. So not the notice you you're fired as of a future date it's when you work your last day. And in the Williams... Counsel does it does it matter that in STUPEC we were dealing with a constructive discharge? Because influences that where a person reaches the point that she would leave employment or resign in response to it. And indeed in that kind of case the injury doesn't occur legally until the discharge. So does it make a difference? It doesn't make a difference your honor. The case is both following the Rick's rule and following the opposite rule which we're advocating for here. All So the fact that STUPEC was a constructive discharge case doesn't affect it. And likewise in Williams where the court was talking about the same statute at issue here the Oregon Supreme Court says that the discharge claim accrues on the discharge and says that that occurs at the end of the notice has been given. And so even talking about the statutory claim of a traditional employer a lead discharge it's it's the actual end of the relationship that matters. So why would that be April 2nd rather than March 31st? Because here even though Miller was told in January that he was fired it was a he was not given any date that was his last day. And to the degree that he was February 19th he continued to work past that date. He continued to be paid past that date. He remained an employee all the way and worked on Friday March 31 expecting to come back the following Monday. And then it was on that Sunday when Watson said your last day that we're paying you for was the prior Friday. So it's and we cited the Michigan cases one involved an employee who had been suspended and was told after the fact your last day was was you're fired and even though the last day work was many days before that. And likewise the other Michigan case that we talked about which employed the same standard for interpreting the statute the same policy considerations at play here in Oregon that where the employee had gone home for the weekend again it's when you're told that you've worked your last day that's when that employment relationship finally ends. Here the employment relationship had not ended on March 31st he was still showing up for work he was still being paid he was going to continue to show up and be paid on the Monday until he was told oh but you've worked your last day. That's consistent with the policy of the statute as well which is to vindicate employees' rights to a fair workplace. It's also consistent with the ordinary common plain meaning of the term discharge. That's what people think of when they think oh I've been told and I have worked my last day and I know it I have worked my last day. That's when that employment relationship is finally severed. When did he stop receiving payment? Was he paid through April 2nd? Could he have submitted health insurance claims through April 2nd? He could have submitted any claim through April 2nd. I believe the last day they actually paid him for was March 31st but he could have been entitled to payment on April 1st and 2nd because he remained an employee on those days. He was fully you know just just as someone who you know goes on vacation or has an injury remains an employee even in one of the employee was suspended and termination was all but a foregone conclusion and the court held it wasn't until the employee was told you've worked your last day you're done here don't come back. That's when the termination occurred. I also want to point out that the RICS rule that the district court relied upon here is one that wasn't adopted until after Oregon enacted its statute defining when the claim accrues. In 1977 when that statute was enacted the relevant case law out in the federal courts all talked about it was not the notice not the pre-advanced notice that defines when the claim accrues. So even if you're looking at federal case law which isn't persuasive in this case anyway given the STUPEC decision the law supports the conclusion that it's when the employment relationship finally ends. That's what's the defining feature. We cited a host of decisions from other state Supreme Courts and intermediate appellate courts all rejecting that RICS rule and the fact here the fact situation here involving an employee who's told in advance you're fired as of a date uncertain it's not clear the employee continues to come to work and then ultimately is told after the fact okay you've worked your last day that's an uncommon factual scenario there's not a lot of point case law directly on point in particular because your typical plaintiff would not wait until you know the April 2nd date they would probably sue within a year of actually having that last day worked in this environment. So this I admit there's not a lot of case law directly on point here but all of the case law that's relevant the Oregon cases as well as the many state court cases as well as for example the all indicate that in this context the April 2nd date it's when you've been told you have worked your last day that's when that employment relationship finally is severed. I'd like to talk about the discharge issue I mean the certification issue as well I think the tea leaves all point very clearly in one direction in this case but to the degree the court is not certain about it certification is appropriate here because admittedly there isn't a controlling decision from the Oregon appellate courts but this is an important issue this court has recognized the key policy interest of the sovereign state of Oregon in ensuring a fair workplace for its employees this case although this is a whistleblower retaliation claim it Miller didn't seek certification below that's no bar of certification here we cited a slew of cases where this court routinely certifies cases when certification is sought for the first time on appeal. I'd like to talk about also the April 5 interview claim that claim is undisputedly timely below the district court noted at the summary judgment hearing that that claim had been highlighted in Miller's briefing and specifically asked Watson's counsel to address that claim. Watson's counsel did not say oh there is no such claim for the April 5 interview as an independent adverse act. Watson's counsel did not say such a claim was not raised on summary judgment. Watson's counsel instead addressed the claim on the merits and talked about why that claim fails because Miller was a former employee by that time because no charges were ultimately filed against him and so forth. So the district court recognized the claim was raised and so did Watson's counsel. It appears the district court just overlooked the claim when drafting the opinion. Now it's true that the district court mentioned in its opinion that statement in another part of Miller's summary judgment response saying that all the adverse acts had occurred by April 2nd but that was just an argument in the alternative on a different argument that Watson had made. Watson argued anything that happened after April 2nd and indeed Watson argued everything that happened after January of 2017 was not a viable claim because by that time Miller was a former employee and that the act only protects current employees and in response to that different argument that alternative argument that Watson had raised Miller said all the acts that were complaining about occurred by April 2nd but that's different from the claim that you know you can argue inconsistent theories without waiving any one of those theories that's what this court has held and we cite Justice Alito talking about this point in the Supreme Court as well and here Miller was making inconsistent arguments because you want to make every argument your opponent has raised. Going back, the citation in the record where you say that the April 5 incident was part of the record in the argument before the district court? Well where the district court says that ER 24 how this claim was highlighted in the briefing by Miller and also I would direct the court to ER 134 where Miller talks about the blackmail allegation being a linchpin of the actions against him and talks about Watson's false allegation of blackmail and the investigations that foreseeably followed and that Watson returned to facilitate which in the evidence describes only the April 5 interview and then Watson himself in his summary judgment papers admitted this was a core claim. That's at SER 202 and then it was at ER 27 where Watson's counsel says with regard to the argument that by sitting for an interview requested by the OSP on April 5th that somehow Steve Watson had engaged in adverse employment action or any other type of tortious conduct we ask the court to consider these things. There is no evidence that Mr. Watson voluntarily suggested to the OSP that they interviewed him and then they also say that that was after their theory of the termination date which was April 2nd. So they argue about it being on these merits issues about whether the April 5 interview was voluntary or not and whether Miller was a current or a former employee at that time. They don't say this issue was not raised adequately by Miller. I'm happy to reserve the rest of my time for rebuttal if I may. Let me just ask you again, was he an employee on April 5? By April 5 he was not an employee. He was a former employee. It's not an issue on this appeal. We disagree with the theory that only a current employee can bring a claim. In this context, but that's not an issue here. It's just whether the claim is timely or not. And on April 5 he had been terminated on April 2nd. He was no longer an employee, but he can still bring a claim despite being a former employee on April 5. But that issue is not before this court. Thank you. May it please the court, Blake Fry for the appellee, Steve Watson. First of all, let me clarify just a couple of points. Miller was not an employee of the district. He worked for a contractor and he worked for the district as a subcontractor under a subcontract that the district entered with the contractor. The other point of clarification I think that needs to be made is that this is not a claim for a retaliatory discharge. This is a statutory whistleblowing claim for retaliation where a discharge is just not an element of the claim. So let me take a minute to provide an overview of kind of where we are and how we got here. Miller made two whistleblowing claims under state law that corresponded to two alleged unlawful employment practices. On summary judgment, the district court found that both claims were time barred. And in particular, it found that there was no disputed questions of facts about the relevant dates or what happened on those relevant dates. And it concluded from those undisputed facts that the claims accrued outside of the applicable limitations periods. One of the claims was based on the termination of the subcontract that Miller was working under. And Miller argued to the district court that the date of his quote actual termination was a disputed question of fact that precluded summary judgment because there was a question in his mind about whether the subcontracts termination had been quote rescinded since he continued to work for some period afterwards. And then the other claim was based on Watson's alleged instigation of an investigation into Miller conducted by the Oregon State Police. Miller argued with respect to that claim that that claim was timely under the discovery rule because he didn't learn about the investigation allegedly until within the statute of limitations period. The district court held for the claim with respect to the termination base of the subcontract that there's no question of fact about what Miller was told when he was told it and what the effect of what he was told was. Counsel, if I might ask you, the statute of limitations is tied to one year after the occurrence of the unlawful employment practice. Correct. And then unlawful employment practice is defined by a separate statute as to take or threaten to take disciplinary action against an employee for a protected activity. Could a reasonable trier of fact find from this record that January 20, 2017, was the that email was the date of the threat and that April 2, 2017, that was the disciplinary action? I'm not saying that it would be required to find that. You might persuade the jury not to find that. So could a jury find that reasonable jury? Well, first of all, there's the briefing on appeal doesn't argue for the existence of any disputed questions of facts. All the arguments below were about disputed questions. The fact the argument on appeal is exclusively based on is exclusively argues that the district court made errors of legal reasoning based on undisputed questions. Answer your question. It's DeNovo review here. So that's kind of begs the question, because if we determine we can look at it on any basis under the DeNovo review. Well, to answer your question directly, first of all, just generally, with respect to any retaliation claim, the general standard is that a an adverse employment action that's capable of supporting a retaliation claim is anything that would dissuade a reasonable employer. Employee from engaging in a protected conduct. And under that standard, there's a slew of cases which would say notifying somebody of a termination, for example, is an adverse employment action that's sufficient to support a retaliation claim. Even if, in fact, determination was never carried out. And then in particular, with respect to this statute, this statute, this whistleblowing statute also defines, as you pointed out, various various acts of unlawful employment practices that also qualify as able to support a retaliation claim under the under the whistleblowing statute. And those, as you can see from the list that's enumerated in the statute, and as that list is further defined elsewhere in the statute, a an actual separation from employment is not required in order to have an actual actionable retaliation. Well, might you have two might you have two retaliatory acts here? Because there is at least one Oregon case cited to us where there was a distinction between termination and declining to reinstate. Could you have an act on January 20? Because this person continues on. He's continued to be. First of all, the email he gets in January says I'm given 30 days notice. So it's not even that date. It's at least 30 days. But he continues on and continues to be paid. And then later we get the second email that says you've worked your last day. So could there not be at least two acts here? Well, not not unless not unless there is an allegation and evidence to support that the second notice that you're not authorized to do any more work was motivated by a distinct a distinct unlawful by a distinct unlawful retaliatory motive. And that argument has never been made. And there's no evidence to support that the notification on April 2nd that Miller was not authorized to do do any more work was not simply the inevitable consequence of the notice given in January that the subcontract was terminated. And indeed, the subcontract did terminate by operation of the clause in the subcontract, which the district invoked when it told the contractor that it was it was invoking that provision by which the contract subcontract would terminate on 30 days notice. And I think the case that you're referring to is Williams, which is which is factually different in this case, because in that case, the claimant issue in that case was not based on on a termination or not. The claimant issue in that case was a claim based on the employer's refusal to reinstate the plaintiff to his job after he had made a workers' compensation claim and after he had recovered from his injury and and after he had demanded to be reinstated to his job as was his right under the workers' compensation statute. And what the court held in Williams is that the termination that the termination had no bearing on whether the claim based on the on the employer's failure to reinstate the plaintiff was timely because the claim only accrued once the demand for reinstatement was made and once the demand for reinstatement was made and once the employer refused that demand. And so that's the basic holding from Williams. Well, let me ask you, with respect to Williams, although it doesn't mention Dobie, but your brief has fairly extensive discussion of Bobie, wasn't Dobie essentially abrogated by the court's decision in Williams Waterway? No, because there's a critical distinction between the two cases. And this is actually pointed out in the court of appeals decision. There's a dissent in Williams and the dissent in that case points to the critical distinction between Dobie and Williams. And what that distinction is, is that the refusal to reinstate there was an issue in Dobie was simultaneous with the termination notice. And so both cases stand for the same proposition, which is that the claim at issue begins to run with the employer's decision. It's refusal to reinstate the plaintiff once he made a demand to be reinstated for his job, once he was recovered from his injury and able to return from work. So there's no there's no conflict at all between those two cases. And in fact, they stand for the same proposition. And the point that we cited Dobie for was to support that. In fact, the court of appeals has already cited Rick's in the same kind of claim at issue here. Again, not a common law wrongful discharge claim like was it like was at issue in DuPec, but a civil rights claim, a statutory whistleblowing claim in this case. And what the court said in Dobie, citing Rick's as persuasive authority, was that the claim accrued as soon as the employer told the employee that he would not be reinstated as was his right under the workers' compensation statute. And what the plaintiff had argued in that case was, yes, you told me that I was terminated and that you were refusing my demand to be reinstated outside of the limitations period. But I continue to ask, I continue to make demands to be reinstated within the limitations period. And I'm dating my claim from one of the dates within the limitations period where you refused my demand. And what the court said in Dobie, citing again to Rick's persuasive authority, is that the plaintiff cannot successfully extend the statute of limitations by pointing to just the continued inevitable consequences of the initial decision, which was alleged to be unlawful. But then given this relationship among Dobie, Rick's, and Chardon, and then we come to Stupik, why doesn't Stupik tell the answer here? Well, because Stupik involved a common law wrongful discharge claim. And again, as we've argued in the answering brief, in essence, no discharge was necessary here before. And as we discussed earlier, no discharge was necessary for this retaliation claim to be actionable. And Stupik cites Rick's in a footnote. And the point that Stupik makes in that footnote is simply it cites Rick's just for the proposition that in a discrimination claim under Title VII, the Supreme Court held that the claim accrued with notice of determination. And then it went on to say in that footnote that some states, when they're assessing common law wrongful discharge claims, have looked to the decision in Rick's and have said that under their state's common law wrongful discharge claims, that the claims accrue according to the Rick's notice rule. But what the court said in Stupik was there are two elements to a claim for common law wrongful discharge. First of all, there has to be a wrongful, and number two, there has to be a discharge. And so what basically the court was citing to earlier Oregon precedents was that a discharge is an element of a wrongful discharge claim so that literally there is no claim. There's actually been a final separation from employment. And again, that's not that's not the standard here because a discharge, an ultimate separation from employment was not necessary before Miller had an actionable retaliation claim under the whistleblowing statute. But but counsel, it seems to me we're trying to focus on what Oregon means by occurrence of the unlawful employment practice. And are you saying that and you can't rely on Rick's and Chardon here for this answer? Are you saying that the unlawful employment practice occurred in January and it didn't occur again in April? Right. And so, in other words, another claim did not reaccrue in April when he when when Miller was told that he was not authorized to do any more work, the claim accrued the unlawful employment practice is the alleged retaliatory decision to terminate the subcontract. And then the claim accrued, as we argued, when that unlawful alleged unlawful retaliatory decision was in communicated to Miller. Right. Because at that moment, he had an actual an actionable claim under the general standards that apply to any retaliation claim, because at that moment, he would be dissuaded. A reasonable employee would be dissuaded from engaging in protected activity and under the standards spelled out in the statute itself. So but under under your theory, any statement, whether credible or not, would then kick off the statute of limitations. So that doesn't make a lot of sense in the practical world of how employment works. Well, it's the issue is not any statement. It's the statement, in effect, that your sub the subcontract that you were working under has been terminated. And not just that it's been terminated, terminating your subcontract. It's also that I've notified the contractor that we're invoking the provision in the subcontract, whereby it terminates with 30 days notice. And in addition, what Miller really wanted was be directly employed by the district. And what was also conveyed to him in January was that the district was not going to employ him as a radio operations manager. So it's not just simply that any statement was given to Miller. The statement was, in effect, you're terminated. It's that statement that is actionable under the general standards that apply to any retaliation claim and to the specific standards as they're spelled out. But he wasn't terminated. The reality was that he wasn't terminated. Well, what the district court found was that the end of his employment relationship in April was the inevitable consequence of that earlier decision and that there was no disputed question of fact on that. And that, according to Rick's, the mere fact that he continued to work for some period did not serve to make the serve to make the claim timely. And thanks. I see that I'm out of time. Counsel, can I ask you a question, please? Yes. Assuming we decided that the date of discharge was relevant to accrual, do you argue that he was discharged on April 2nd or March 31st? Well, the last day he worked was in in March. And again, I again, there's not there was no discharge here. He's not an employee. He's a subcontractor working under a subcontractor. That subcontract by operation of its termination clause ended in February. And so it's I mean, it's just inaccurate to say generally whether or not he was discharged because he was not an employee. What was if if if the contract ended in February and they told him in January, this contract is going to end and end in February and he keeps working? What's his status? Well, I think what we argued in the answering brief is, in effect, he would then be working under an at will relationship and the consequence of that. And one of the things we pointed out is the consequence of the fact that he was no longer working under the protections of the subcontract is in is in and of itself another actionable, another basis to have an actionable retaliation claim because he lost something tangible by the cancellation of the subcontract that he was working under. He's an at. Let me just interrupt. If he's an at will status, he's an at will employee. Correct. Well, he would be working at will, but that doesn't necessarily make him an employee of the district. That's what I'm asking. You're you're using employment terms for someone who you've characterized because of the contract as a contractor. So he's at will at what and to whom? Well, the arrangement under which he would have been working for doing work as a consultant for the district would have been an at will and range arrangement. At will. Pardon me. It would have been an at will arrangement. And so the point that we're trying to make is that, you know, you're not answering my question. So you've said, I think he's not an at will employee at the time he leaves in April. Is that right? Well, he would because it's subcontract terminated. Yes, he'd be an at will employee working under an at will and working under an at will arrangement. I mean, there's there's there's not a second option. Well, an arrangement under a contract. No, just just under the general standards that apply whenever whenever. Well, that's what I'm trying to get to, but you won't give me a straight answer. I'm trying under under the standards under the general. We want to listen to my question. Do you want to listen to the question? And then you can answer. And if you have a further explanation, then maybe you'll illuminate when he became an at will individual. Is he characterized as an at will employee under the common law at that point? Yes, yes. That that was my question, and now I understand your answer. Thank you very much. OK, thank you. You have some rebuttal time. Thank you. First of all, it doesn't matter directly whether he was an employee per se or a contractor, because 659A.201 defines employee to include contractors. This wasn't an issue that was raised below or disputed below. In terms of discharge, the statement was made that it's not a part of the cause of action. Under the statute, you have to have a disciplinary action. That's what that's a necessary element of the claim. And 659A.200 defines disciplinary action to include dismissal. Judge Fitzwater made the point that can't you have multiple claims? Yes, you can. In this instance, for example, Miller is suing both about his termination as well as the April 5 interview and made additional claims below that aren't asserted here on appeal. Many bad things can happen to you, and you can sue over all of them or pick and choose what you want to sue over, which disciplinary actions, adverse actions you want to sue about. The one at issue right here is the discharge, the dismissal, the April 2. You aren't working here anymore. Don't come to work tomorrow. That is what we're talking about here. And as a question of fact, certainly a jury could find that that was a disciplinary action taken against Miller. Additional things, not that it's necessary, but additional reasons for the retaliation had occurred since January, including additional disclosures such as the disclosure Miller made to the board, including all the stuff in March that had been going on with the two reports from the Bullard firm. I think it's important regarding Stupak. Yes, it's a common law case. So then why did they talk about Ricks? They talked about it because they disagreed with that notice rule. And the Oregon Supreme Court agreed with Romano where the California Supreme Court adopted the same rule for both common law and the statutory claim for the same reasons and rejecting the advance notice rule that in here, the January rule that Watson has contended for. With regard to the distinction between March 31 and April 2, Williams talks about how, again, this needs to turn on reasoned policy, not fortuity. And it's totally fortuitous whether the employer is telling you you've worked your last day on the Sunday because your last day was a Friday and you're home for the weekend or it was vacation or an injury or any other cause why they tell you on a day different from what your last day that you were at the office was. And so for the reason policy expressed by the Oregon Supreme Court and Stupak and Williams asked this court to reverse. Thank you very much. Thank you. Case just argued of Miller versus Watson is submitted. Thank both counsel for the argument this afternoon. And we have no remaining cases on the calendar. So we adjourn.
judges: McKEOWN, BADE, Fitzwater